### 75469. WATTS v. THE STATE.
(365 SE2d 501)

BANKE, Presiding Judge.

Kerry Lewis Watts brings this appeal from an order of the trial court dismissing a prior appeal from the denial of his motion for new trial following his convictions of kidnapping with bodily injury, false imprisonment, and entering an automobile.

The victim was employed as a trainer at a horse farm in rural Monroe County, Georgia. While she was at work on April 29, 1985, her checkbook, bank credit card, and $8 in cash were removed from her automobile, which was parked on the farm. She reported the theft to the police, who lifted tire prints from the scene.

The following morning, while she was alone at work, the victim was approached by a man wearing a ski mask and brandishing a shotgun. Although she could not observe the assailant's facial features, she described him as being a heavy-set person, approximately 5 feet 6 or 7 inches tall, weighing 200 pounds, with a thick neck and sparse beard, and wearing mismatched knitted gloves. The assailant asked the whereabouts of the farm owner, whom he referred to as "Tommy," and then locked the victim in the stable tack room for a period of time while apparently awaiting the arrival of "Tommy." He subsequently released her, ordered her into the driver's seat of her car, and, sitting in the passenger seat, instructed her to drive along a road leading toward the back of the farm, where he ordered her out of the car, tied her hands together, and tightly gagged her mouth with her sock, making references during these proceedings to the fact that her car had been broken into on the previous day. He then threw her to the ground and beat her repeatedly about the head and back with the barrel of the gun. Pretending to be dead, the victim remained on the ground until the assailant left, whereupon she managed to get to her feet and return to the farmhouse to summon help. The victim's checkbook and a pair of gloves bearing the name "Timmy Watts" were subsequently discovered approximately 500 yards from the barn. In addition, tire and shoe prints were lifted from the crime scene.

The police investigation led to the appellant, whose physical characteristics matched the description given by the victim of her assailant and who was the brother of a Timmy Watts. The police proceeded to the appellant's residence and asked him to accompany them to the sheriff's office. The appellant agreed to do so and drove there in his own car. *Miranda* warnings were then administered and a written waiver of counsel obtained from him, following which, after approximately 30 minutes of questioning, he admitted his participation in the offenses and further revealed that the shoes he had been wearing at the time of the commission of the offenses were at the residence where he and his mother lived. The appellant, and subsequently his mother, gave their written consent to search the residence, resulting in the seizure of a pair of shoes whose soles matched the prints left at the crime scene. Also, it was determined that the tread of the tires on the appellant's car matched the tire prints lifted from the scene. There was evidence showing that the appellant's mother had in the past worked as a housekeeper on the farm where the offenses had occurred and that the appellant had on occasion

been there with her.

After the indictment was returned in the present case, the appellant filed an "Application for Appointment of Counsel and Certificate of Financial Resources," in compliance with Rule 29.2 of the Uniform Rules for the Superior Court. Pursuant to this application, he was found to be indigent and counsel was appointed to represent him. On September 19, 1986, after the appellant had been found guilty, his appointed trial counsel filed a motion for new trial on his behalf. Subsequently, on October 3, 1986, a retained attorney entered an appearance as counsel for the appellant. The motion for new trial was amended on April 8, 1987, and was subsequently denied by the trial court on April 16, 1987. Thereafter, on April 30, 1987, the appellant's retained counsel filed a timely notice of appeal, directing that the "transcript of evidence and proceedings . . . be filed for inclusion in the record on appeal," and specifying that the appellant, having "proceeded below" as an indigent, would continue to proceed as an indigent on appeal.

On May 1, 1987, appellant's retained counsel received a certified letter from the Clerk of the Superior Court requesting payment of costs in the amount of $164 for the preparation of the record and transcript. Forty-one days later, on June 10, 1987, the state moved to dismiss the appeal based on the appellant's failure either to pay these costs or to file an affidavit of indigence. Following the hearing, the trial court granted this motion, finding that the "[appellant's] failure to pay court costs or file a pauper's affidavit [had] caused an unreasonable delay in the transmittal of the record" and further finding that the appellant was not indigent. This appeal followed. *Held*:

1. Pursuant to OCGA § 5-6-48 (c), "[n]o appeal shall be dismissed by the appellate court nor consideration of any error therein refused because of failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed by law or order of court; but the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript *and it is shown that the delay was inexcusable* and was caused by such party. In like manner, the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence. . . ." (Emphasis supplied.)

Pretermitting whether the affidavit of indigence filed by the appellant at the inception of the prosecution satisfied the requirements of OCGA § 5-6-48 (c), and also pretermitting whether the trial court abused its discretion in determining that the appellant was not indigent at the time the appeal was filed, we conclude that the trial court

erred in dismissing the appeal absent a finding that the delay was inexcusable as well as unreasonable. Moreover, we conclude that, under the circumstances, a finding that the delay was inexcusable would not have been authorized.

The evidence demonstrated that the original adjudication of indigence, which was never challenged by the state, was predicated on full disclosure by the appellant of his financial assets. It appearing that the appellant has been incarcerated since the time of his arrest, it is not apparent how his financial situation could have improved during this period. (His retained counsel was secured by his mother and family friends.) Based upon these factors, the appellant's present counsel asserts that he justifiably assumed that the bill for costs had been sent to him in error. While we recognize that "a convicted party can by his own conduct, or by his conduct in concert with that of his attorney, forfeit his appeal," *State v. Denson*, 236 Ga. 239, 240 (223 SE2d 640) (1976), under the present facts, we hold that a dismissal was not authorized. See also OCGA § 5-6-30. Since the entire record has been transmitted to us and the issues have been briefed by the parties, we accordingly proceed to the merits of the appellant's original appeal.

2. The appellant submits that his confession was erroneously admitted at trial because it was the product of an illegal arrest.

The appellant, a high school graduate who was 21 years of age at the time of trial, acknowledged his willingness to talk to the police when they arrived at his home and further acknowledged that he agreed voluntarily to accompany them to the police station. The officer in charge of the investigation testified that the appellant was not considered to be under arrest at that time. In *Richardson v. State*, 182 Ga. App. 827 (357 SE2d 162) (1987), this court upheld the admissibility of an incriminating custodial statement obtained under similar circumstances. Contrary to the appellant's contention, the present case is distinguishable from *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979), where it was shown that the police had orders to "pick up" the defendant and "bring him in" for questioning and that the defendant "would have been physically restrained if he had attempted to leave." Id. 442 U. S. at 203. In the present case, there is nothing to conflict with the state's showing that the appellant was not arrested until after he admitted his involvement in the offenses. "In the absence of evidence that the [trial] court's findings were clearly erroneous or evidence of a clear abuse of discretion, [its] findings at a *Jackson v. Denno* hearing will not be disturbed on appeal." *Sanborn v. State*, 251 Ga. 169, 170 (304 SE2d 377) (1983). We hold that the trial court did not err in admitting the appellant's confession.

3. The appellant's four remaining enumerations of error, which

concern the trial court's failure to suppress physical evidence seized from his residence and automobile, are not supported by argument or authority. Consequently, pursuant to Rule 15 (c) (2) of this court, they are deemed to have been abandoned. We have nevertheless reviewed these enumerations of error and have determined each to be without merit.

*Judgment dismissing appeal reversed; judgment of conviction affirmed. Carley and Benham, JJ., concur.*

DECIDED JANUARY 28, 1988.

*Thomas M. West*, for appellant.
*E. Byron Smith, District Attorney*, for appellee.